### GLOSTER v. GLOSTER.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

**1. SEPARATE MAINTENANCE—CRUELTY.**
Where the husband compelled his wife to do, in addition to the ordinary housework, the "free lunch" cooking for his saloon, involving the lifting of kettles weighing 50 pounds, used violent and profane language towards her, failed to provide proper clothing, and finally abandoned her, she is entitled to separate maintenance on the ground of cruel and inhuman treatment.

**2. SAME—ABANDONMENT.**
The act of a husband in driving his wife from his house, and denying her the right to live there, because she refused to promise not to go near her father and mother, constitutes abandonment.

Van Brunt, P. J., and Rumsey, J., dissenting.

Appeal from special term.

Action by Mary Gloster, an infant, by her guardian ad litem, against Maurice Gloster, for separate maintenance. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

A. H. Hummel, for appellant.
W. S. Burt, for respondent.

WILLIAMS, J.　　The action was brought to procure a separation of a husband and wife from bed and board, and to compel the husband to make suitable provision for the support of the wife. The grounds upon which the action was based were cruel and inhuman treatment, neglect and refusal to provide for, and abandonment of, the wife. The court granted the decree of separation, and adjudged that the husband pay eight dollars per week for the wife's support during her natural life. The parties were married December 4, 1894. The husband was then 37 years of age, and the wife was 18 years of age. The husband was a saloon keeper. The wife became pregnant soon after the marriage, and gave birth to a child about nine months thereafter. The court found that the husband was guilty of cruel and inhuman treatment of the wife; that he compelled her, from the time of the marriage until near the time of the birth of her child, against her remonstrance, not only to do the ordinary housework, but to cook free lunch for the saloon, the lunch consisting of large pieces of meat of different kinds, often weighing about 14 pounds; to place this meat in a large iron pot, which she had to lift upon the stove, 3 feet high, the whole weighing about 50 pounds, including water; to lift same down when cooked; she being all the while in delicate health, unused, and physically unable, to do this work; that he swore at her, and used violent and profane language towards her, shocking her, and causing her mental anguish; that he often left her alone at night, in great fear, saying, on his return, he had been playing poker; that he failed to provide for her proper clothing to enable her to go out of doors; and finally abandoned her, refused her admittance to his home, and neglected to furnish her with the necessaries of life. These findings were sufficiently supported by the evidence. The wife weighed only 103 pounds, and her health was not good. She was compelled by her husband to do the work described during her pregnancy, and until within three days of the birth of her child. It caused her a terrible feeling inwardly. Lifting the pot caused her sides to feel as if falling in. and she had terrible stitching pains in the side from it. She complained to her husband, but he merely gave her abuse, swore at her, said that he did not get her to put in a glass case, and that she could not live with him unless she did this work. Once she left him on this account, about four months after the marriage, but he made her fair promises, and she returned, when he treated her the same again. It is no wonder the child, when born, was a feeble, sickly one, and soon died. The treatment was cruel in the extreme, and, taken in connection with his swearing at her, his leaving her alone at night, and his refusal to furnish her proper clothing, and his denying her the right to visit her own people, who lived near by, was sufficient ground for granting the separation by reason of cruel and inhuman treatment. After the birth of the child, the wife lived two weeks with her husband. Then she went to her mother for three days. Then she returned to her husband's

48 N.Y.S.—11

home, and he told her she could not live with him unless she gave up her people.    Under no condition could she live with him unless she solemnly promised not to go near her people.    She said she could not do that, and thereupon he said: "Get out, then.    You can't live with me."    This constituted abandonment.    He drove his wife from his house, refusing her the right to live with him, giving only as a reason for it that she would not promise to entirely abandon her own people, the mother and father who gave her life, and cared for her in her infancy.    This was no legal or proper excuse for turning his wife out of doors, and constituted legal abandonment.    It may be said that afterwards he urged her to return to him, and that may be true, but it does not appear he waived the condition already made, that she should abandon her parents.    The evidence offered by the wife was more or less the subject of contradiction on the trial by defendant and the witnesses produced by him, but the witnesses were present before the trial judge, and he had the opportunity to hear their evidence, and to observe their bearing, and he could better determine whether they testified truly than we can upon printed papers.    We think his conclusions as to the facts should not be disturbed by us.

Judgment appealed from should be affirmed, with costs.

BARRETT and PATTERSON, JJ., concur.    VAN BRUNT, P. J., and RUMSEY, J., dissent.